IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: CV01-337-N-EJL |
| | ) | |
| TAIGEN & SONS, INC.; | ) | |
| ROBERT TAIGEN; JACKLYNE M. | ) | CONSENT ORDER |
| TAIGEN; and DDI ARCHITECTURE | ) | |
| & PLANNING, CO. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

1.  This Consent Order resolves the above-captioned case brought by the United States of America against defendants Taigen & Sons, Inc., Robert Taigen, Jacklynne M. Taigen, and DDI Architecture & Planning, Co. (collectively referred to as "Defendants").[1]  The Complaint alleged that Defendants discriminated against persons with disabilities by failing to design and construct Centennial Trail Apartments, located at 360 North Bay Street, Post Falls, Idaho, in accordance with the Fair Housing Act ("the Act" or "the FHA"), 42 U.S.C. § 3604(f)(3)(C), the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12183(a)(1), and the Department of Justice's regulations at 28 C.F.R. Part 36.

2.  The Taigen Defendants are the developers of Centennial Trail.  Mr. and Mrs. Taigen are the owners of Centennial Trail.  DDI designed Centennial Trail's buildings.  Centennial Trail has 86 apartments in four buildings.  Thirty two of the apartments are located on the ground floor levels

---

[1] Taigen & Sons, Inc., Robert Taigen and Jacklynne M. Taigen are collectively referred to as "the Taigen Defendants."

of the four buildings and are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(B).  These units and the public and common use areas, including the rental office, are subject to the Act's requirements at 42 U.S.C. § 3604(f)(3)(C).  In addition, the rental office is a "public accommodation" within the meaning of 42 U.S.C. § 12181(7)(E).  The rental office and its attendant public use areas are subject to the ADA's requirements at 42 U.S.C. § 12183(a)(1) and the Department of Justice's regulations at 28 C.F.R. Part 36.

3.  On December 14, 2001, default was entered against DDI.  On September 29, 2003, the Court granted the United States' motion for summary judgment in part, finding that the Taigen Defendants violated the Act and the ADA by failing to design and construct Centennial Trail in compliance with those laws.  On January 25, 2006, the Court directed that Centennial Trail must be retrofitted within one year or sooner without regard to whether any resident requests such repairs and directed the parties to submit a joint remedial plan to bring Centennial Trail into compliance with the FHA and ADA.  On March 30, 2006, the Court ordered Defendants to retrofit the common use areas of Centennial Trail within 90 days and the units within one year.  The Court's Order specified the requisite retrofits for the common use areas and the units at Centennial Trail.

4.  The parties agree that all claims against Defendants should be resolved without an evidentiary hearing as to the remaining issues, including remedies.  Therefore, as indicated by the signatures appearing below, the parties agree to the entry of this Consent Order.

It is hereby ORDERED, ADJUDGED AND DECREED:

## I.  GENERAL INJUNCTION

5.  The Taigen Defendants, their officers, employees, agents, successors and assigns, and all

other persons in active concert or participation with them are enjoined from discriminating on the basis of disability, as prohibited by the Act, 42 U.S.C. § 3604(f)(1)-(3), and as prohibited by the ADA, 42 U.S.C. §§ 12182(a) and 12183(a)(1), and the Department of Justice's regulations at 28 C.F.R. Part 36, where applicable.

## II.  CORRECTIVE ACTIONS

6.  The Taigen Defendants agree to take the following corrective actions with respect to the covered ground-floor dwellings and the public and common use areas affiliated with those buildings.

A.  Public and Common Use Areas:  Within 90 days from the date of entry of this Order, the Taigen Defendants shall modify the public and common use areas of Centennial Trail as specified at Appendix A.  They shall pay all expenses associated with these modifications.

B.  Dwelling units:  Within one year from the date of the entry of this Consent Order, the Taigen Defendants shall modify the ground-floor apartments as specified at Appendix B.  They shall pay all expenses associated with the modifications

C.  Additional Alterations at Tenant's Option:  The Taigen Defendants shall provide the modifications specified at Appendix C upon a resident's request in accordance with the provisions set forth below.

D.  Notice to Tenants and Prospective Tenants:  Within 10 days of the entry of this Order, the Taigen Defendants shall provide written notice that the modifications specified at Appendices B-C are available to tenants and prospective tenants of Centennial Trail's ground-floor units.  This notice, provided to the United States for its approval prior to the entry of this Order, is at Appendix D.  The notice shall be sent to tenants with a self-addressed postage prepaid envelope and shall include a form specifying what alterations may be made in the specific unit so that the resident may

3

mark which alterations he/she would like made to the unit and then return the form to Centennial Trail's rental office.  The notice shall be provided to prospective tenants at the time they inquire about renting an apartment.  The notice shall provide that the alterations may be requested at any time during the tenancy.  If the Taigen Defendants receive a request to perform any retrofit(s) specified at Appendix B, they shall complete the retrofit(s) within 45 days from the date of the request.[2]  If the Taigen Defendants receive a request to perform any retrofit(s) specified at Appendix C, they shall complete the retrofit(s) within 10 days from the date of the request.

E.   Inspections and Certifications of Retrofits:

i.  The Taigen Defendants shall enter into a contract with a neutral inspector approved by the United States to conduct on-site inspections of all retrofits required by this Order to determine if they have been completed in accordance with the specifications in Appendices A-C.  The inspections shall take place on the following schedule:

a. Common Areas (Appendix A) – Within 120 days of the entry of this Order;

b. Units (Appendices B-C) – Within 13 months of the entry of this Order.

ii.  The Taigen Defendants shall give the United States at least three weeks notice of the date of the inspection and shall give the United States an opportunity to have its representative present for the inspection.

iii.  The inspector shall set out the results of each inspection, including deficiencies if any, in writing and shall send that report to the United States and the Taigen Defendants.[3]  If the

---

[2]Although a tenant may request that only a portion of the retrofits specified at Appendix B be made, this does not relieve the Taigen Defendants of the duty to complete all retrofits within the one-year period specified by paragraph 6(B) above.

[3]All submissions to the United States or its counsel shall be made to: U.S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section – NWB, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, Attn: DJ No. 175-22-30.

inspection indicates that any of the required retrofits have not been made as specified in Appendices A-C, the Taigen Defendants shall correct any deficiencies within a reasonable period of time as determined by the inspector, and shall pay for another inspection by the same inspector to certify the deficiencies have been corrected.

iv.   The Taigen Defendants shall pay all of the inspector's costs associated with the inspections   Such payments shall be made without regard to the inspector's findings.   Upon reasonable notice to the Taigen Defendants, representatives of the United States shall be permitted to inspect the modifications made by the Taigen Defendants in accordance with this Consent Order and/or the third-party inspection reports provided for in this Order, to ensure compliance; provided, however, that the United States shall endeavor to minimize any inconvenience caused by such inspections.

7.   As some of the apartment retrofits required by this Order may cause undue inconvenience or hardship to a resident necessitating that he/she vacate the unit for more than 24 hours consecutively, the Taigen Defendants will pay the resident the applicable government per diem rate for food and lodging for the local area for each day that he/she does not live in the apartment.   Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations while dislocated.

8.   The Taigen Defendants may not charge any additional rent, deposit or other fee for the ground-floor units solely because of the contemplated or completed retrofits.

9.   Sale or Transfer of an Ownership Interest in Centennial Trail:

The sale or transfer of ownership, in whole or in part, of Centennial Trail shall not affect the Taigen Defendants' continuing obligations to retrofit the complex as specified in this Consent Order.

5

Should Mr. and Mrs. Taigen decide to sell or transfer ownership of Centennial Trail, in whole or in part, prior to the completion of the retrofits specified in Appendices A-B, they shall, at least 30 days prior to completion of the sale or transfer: (a) provide to each prospective buyer a copy of this Consent Order and written notice that Centennial Trail is subject to the Consent Order, which specifies the Taigen Defendants' duty to complete the required retrofit work and to allow inspections regardless of the sale or transfer; and (b) provide to the United States, by facsimile and first-class mail, written notice of their intent to sell or transfer ownership, along with a copy of the notice sent to each prospective buyer, that prospective buyer's name, address and telephone number.

### III.  NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

10.  For the duration of this Consent Order, the Taigen Defendants shall submit to the United States the following information and statements regarding any covered multifamily dwellings that they (or any entities in which they have a position of control as an officer, director, member, or manager or have a fifty-percent (50%) or larger ownership share):  a) the name and address of the project; b) the names and addresses of all architects and site engineers; c) a description of the project and the individual units, including number and type of dwellings and amenities in the project; and d) a statement by an architect knowledgeable in the design and construction requirements of the Act, the ADA, and the relevant guidelines and regulations, describing his/her knowledge and training in accessible design, which certifies that he/she has reviewed the plans and that the plans include design specifications that fully comply with the requirements of 42 U.S.C. § 3604(f)(3)(C), HUD's Fair Housing Guidelines, 42 U.S.C. § 12183(a)(1), and 28 C.F.R. Part 36.

### IV.  DAMAGES FOR IFHC

11.  Within 15 days of the entree of this Order, the Taigen Defendants shall pay to the

Intermountain Fair Housing Council $3,000 in monetary damages.  They shall pay said money by sending to the United States a check payable in that amount to the Intermountain Fair Housing Council, provided that no amount shall be paid pursuant to this paragraph before the Intermountain Fair Housing Council has executed a written release of all claims, legal or equitable, that it might have against the Taigen Defendants relating to the claims asserted in this lawsuit.  The Release is at Appendix E.

## V.  DAMAGES FOR AGGRIEVED PERSONS

12.  Within 60 days of the entree of this Order, the Taigen Defendants shall pay a total amount of Fifty-Five Thousand Dollars ($55,000) to compensate the aggrieved persons specified at Appendix F.  The Taigen Defendants shall pay said money by sending to the United States three checks payable in the amounts specified at Appendix F.  Upon receipt of the checks, the United States shall send to the Taigen Defendants an executed Release of all claims, legal or equitable, that the specified aggrieved persons have against the Taigen Defendants relating to the claims asserted in this lawsuit.  The Release is at Appendix E.

## VI.  EDUCATIONAL PROGRAM

13.  Within 30 days of the entry of this Order, the Taigen Defendants shall provide a copy of this Order to all their agents and employees involved in the design, construction, rental, or sale of covered multifamily dwellings and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, and had an opportunity to have questions about the Order answered.  This statement shall be substantially in the form of Appendix G.

14.  During the term of this Order, within 30 days after the date he or she commences an

agency or employment with the Taigen Defendants, each new agent or employee involved in the design, construction, rental, or sale of covered multifamily dwellings shall be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, and had an opportunity to have questions about the Order answered.  This statement shall be substantially in the form of Appendix G.

15.  The Taigen Defendants shall also ensure that they and any other employees and agents who have supervisory authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the HUD Guidelines and the HUD Design Manual.

16.  Within 90 days of the date of entry of this Consent Order, the Taigen Defendants and all employees and agents whose duties, in whole or in part, involve showing, renting, or managing Centennial Trail shall undergo training on the Fair Housing Act.  The training shall be conducted by an independent, qualified third party, approved by the United States, and any expenses associated with this training shall be borne by the Taigen Defendants. The training shall include instruction on the Fair Housing Act, with specific emphasis on discrimination on the basis of disability.  The Taigen Defendants shall provide to the United States, within 30 days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all covered employees and agents confirming their attendance, in a form substantially similar to Appendix H.

17.  Within 90 days of the date of entry of this Consent Order, the Taigen Defendants and all employees and agents whose duties, in whole or in part, involve supervisory authority over the development, design and/or construction of any covered multifamily dwellings shall undergo

training on the design and construction requirements of the Fair Housing Act and the ADA. The training shall be conducted by a qualified third party, unconnected to the Taigen Defendants or their employees, agents or counsel, and any expenses associated with this training shall be borne by the Taigen Defendants. The Taigen Defendants shall provide to the United States, within 30 days after the training, the name(s), address(es) and telephone number(s) of the  trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all the Taigen Defendants and covered employees and agents confirming their attendance, in a form substantially similar to Appendix H.

### VII.  PUBLIC NOTICE OF NON-DISCRIMINATION POLICY

18.  Within 10 days of the date of entry of this Order, the Taigen Defendants shall post and prominently display in the sales or rental offices of all covered multifamily dwellings owned or operated by them, including Centennial Trail, a sign no smaller than 10 inches by 14 inches indicating that all dwellings are available for sale or rental on a nondiscriminatory basis.  The Taigen Defendants shall also post such a sign in the sales or rental office of any other covered multifamily housing developed or acquired by it within the next three years within 10 days of when they commence construction or purchase the property.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

19.  Once Centennial Trail has been brought into compliance with the Act and the ADA, as described in section II, above, and for the term of this Order, the Taigen Defendants shall: a) display in Centennial Trail's rental office a sign no smaller than 10 inches by 14 inches that states that the ground-floor apartments at Centennial Trail contain the accessibility features for persons with disabilities that the Act requires; and b) place in a conspicuous location in all future advertisements,

brochures and promotional literature regarding Centennial Trail's covered multifamily dwellings a statement that the dwelling units meet the Act's accessibility requirements at 42 U.S.C. § 3604(f)(3).

## VIII.  ADDITIONAL REPORTING AND DOCUMENT RETENTION REQUIREMENTS

20. During the period in which this Consent Order is in effect, the Taigen Defendants shall notify the United States in writing within 15 days of receipt of any written or oral complaint against Centennial Trail, the Taigen Defendants or their agents or employees, regarding discrimination in housing on the basis of disability or alleging interference, retaliation, intimidation, or coercion because a person exercised rights protected by the Act or aided, assisted or encouraged others in exercising such rights.  If the complaint is written, the Taigen Defendants shall provide a copy of it with the notification; if the complaint is oral, the Taigen Defendants shall include a written summary of it with the notification.  The notification shall include the full details of the complaint, including the complainant's name, address, and telephone number.  The Taigen Defendants shall also promptly provide the United States with all information it may request concerning any such complaint, and shall notify the United States within 15 days of the resolution of any such complaint.

21.  For the duration of this Order, the Taigen Defendants shall preserve all records related to this Order regarding Centennial Trail and all other covered multifamily dwellings designed, constructed, owned, operated or acquired by them.  Upon reasonable notice to the Taigen Defendants, representatives of the United States shall be permitted to inspect and copy any of the Taigen Defendants' records and to inspect any covered multifamily dwelling under their control at any and all reasonable times so as to determine compliance with this Consent Order; provided however that the United States shall endeavor to minimize any inconvenience to the Taigen

Defendants from such inspections.

22.  Within 180 days after the entry of this Order, and thereafter on the anniversary of entry of this Order throughout the term of the Order, the Taigen Defendants shall submit a report that includes the following: a) all documents respecting the modifications required in section II of this Order; b) the signed statement of each agent and employee acknowledging that he/she received, read and understands the Order; c) written certification of each agent's and employee's attendance at fair housing training; and d) all advertising or promotional literature regarding the Taigen Defendants' covered multifamily dwellings, including Centennial Trail.

## IX.  DURATION OF ORDER AND TERMINATION OF LEGAL ACTION

23.  This Consent Order shall remain in effect for three years and six months after the date of its entry.

24.  By consenting to entry of this Order, the United States and the Taigen Defendants agree that in the event that Defendants engage in any future violation(s) of the Fair Housing Act, such violation(s) shall constitute a subsequent violation pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

25.  The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of the Decree, after which time the case shall be dismissed with prejudice.  Prior to the expiration of the Order's term, the United States may move the Court to extend the duration of the Order in the interests of justice.

26.  The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event of a failure by the Taigen Defendants to perform in a timely

manner any act required by this Order or otherwise to act in violation of any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

## X.  TIME FOR PERFORMANCE

27.  Any time limits for performance imposed by this Consent Order may be extended by the mutual agreement of the United States and the relevant defendants.

## XI.  COSTS OF LITIGATION

28.  Each party to this Consent Order shall bear its own costs and attorney's fees associated with this litigation.

**IT IS SO ORDERED**.

DATED:  **July 18, 2006**

Honorable Edward J. Lodge
U. S. District Judge

12

Agreed to by the parties as indicated by the signatures of counsel below:

**FOR PLAINTIFF UNITED STATES:**

      WAN J. KIM
      ASSISTANT ATTORNEY GENERAL

<u>July 14, 2006</u>   <u>/s/ Kathleen M.  Pennington</u>
DATE          STEVEN H. ROSENBAUM, Chief
          TIMOTHY J. MORAN, Deputy Chief
          KATHLEEN M. PENNINGTON, Trial Attorney
          SUSAN REILLY, Trial Attorney
          United States Department of Justice
          Civil Rights Division
          Housing and Civil Enforcement Section
          950 Pennsylvania Ave., NW – NWB
          Washington, D.C. 20530
          (202) 353-9759

**FOR DEFENDANTS TAIGEN & SONS, INC.,**
**ROBERT TAIGEN and JACKLYNE M. TAIGEN:**

<u>July 14, 2006</u>     <u>/s/ Theresa L.  Kitay</u>
DATE          THERESA L. KITAY, Esq.
          Attorney at Law
          578 Washington Blvd.
          Suite 836
          Marina del Rey, CA  90292
          (310) 578-9134

## Appendix A

## <u>Public and Common Use Areas</u>

1) The leasing office shall be retrofitted as follows:

a) The doorknob on the interior and exterior of the primary entry door shall be replaced with lever hardware, consistent with ADA Standard 4.13.9; ANSI 4.13.9.  <u>See</u> Taigen Defendants' Remedial Plan Item 6; Endelman Report Matrix Item 29.

b) Sufficient maneuvering space for persons using wheelchairs, i.e., 18" of clear space on the pull side of a door, shall be provided at the front entry door of the leasing office, consistent with ADA Standard 4.13.6; ANSI  4.13.6.  <u>See</u> Remedial Plan Item 6; Matrix Item 31.

c) Braille signage denoting the leasing office shall be provided consistent with ADA Standard 4.30.4; ANSI 4.28.4.  <u>See</u> Remedial Plan Item 6; Matrix Item 32.

d) The threshold at the primary entry door of the leasing office shall be retrofitted so that it is no higher than ½" with a 1:2 bevel, as required by ADA Standard 4.13.8; ANSI 4.13.8.  <u>See</u> Remedial Plan Item 6; Matrix Item 30.

e) The bathroom door knobs shall be replaced with lever or other accessible hardware. ADAAG 4.13.9; ANSI 4.13.9.  <u>See</u> Matrix Item 38.

f) The bathroom door shall be rehung so that the pull side of the door is in the hallway rather than in the bathroom.  ADAAG 4.13.6; ANSI  4.13.6.   <u>See</u> Matrix Item 39.

g) Signs in raised letter and Braille denoting the bathroom, and a sign for the bathroom containing the International Symbol of Accessibility, shall be added.  ADA Standard 4.30.4.  <u>See also</u> ANSI 4.28.4.  <u>See</u> Matrix Item 32.

h) The bathroom shall be modified to include:  grab bars at the toilet, ADAAG 4.16.4; ANSI 4.16.4; a sink that has a height no more than 34" above the ground, knee space underneath, a lever style faucet, ADAAG 4.19.2, 4.19.5; ANSI 4.19.2.1, 4.19.2.5; and a towel dispenser that is no higher than 48" above the floor, ADAAG 4.23.7; ANSI 4.22.4. <u>See</u> Matrix Items 33-37, 40.

2) Curb cuts or curb ramps meeting all requirements of ANSI A117.1 1986 shall be added at Building A, Building B, and the public right of way.  Existing non-compliant curb ramps shall be removed or modified to be compliant.  <u>See</u> Remedial Plan Item 2; Matrix Items 1, 3, 28.

3)  The rear entrance doorways to Buildings A, B and C shall be altered to provide sufficient exterior maneuvering space for a person using a wheelchair, 18" of clear space on the pull side of a door, consistent with  ANSI A117.1-1986.  The threshold to the rear entrance doorway to Building D shall be lowered to ½" with a bevel no greater than 1:2 in accordance with ANSI A117.1 1986.  <u>See</u> Remedial Plan Item 3; Matrix Items 5, 16, 18, 22.

4) Wheel stops shall be added to parking spaces that are adjacent to sidewalks along accessible routes to parking and the rental office, so as to ensure that at least three feet of clear width is available for a wheelchair accessible route.  <u>See</u> Remedial Plan Item 4; Matrix Item 4.

5) Required accessible parking spaces for two percent of the covered units, as well as a van parking space at Building A, will have appropriate access aisle markings and signage, consistent with ANSI A117.1-1986.  <u>See</u> Remedial Plan Item 5; Matrix Item 2.

6) One covered parking space, meeting all requirements of ANSI A117.1 1986 for accessible parking spaces, shall be designated as accessible.  <u>See</u> Remedial Plan Item 5; Matrix Item 25.

7) The knobs on the exterior side of the primary entry doors to the ground-floor units shall be replaced with lever hardware, in accordance with 42 U.S.C. § 3604(f)(3)(C)(iii)(I); Guidelines Req. 1 and 2.  <u>See</u> Remedial Plan Item 13; Matrix Items 41, 52, 67, 87.

8) A curb ramp shall be added at one of the trash areas.  42 U.S.C. § 3604(f)(3)(C)(i); Guidelines Req. 2; ANSI 4.3.8.  <u>See</u> Matrix Items 11, 14, 20.

9)  An accessible route shall be added connecting the sidewalk at Centennial Trail's units to the sidewalk at the public street/sidewalk.  42 U.S.C. § 3604(f)(3)(C)(i); Guidelines Req. 1; ANSI 4.14. <u>See</u> Matrix Item 28.

10) The inaccessible sidewalks between the parking, trash and/or the rental office and the ground-floor units, which have cross slopes that exceed 2% (ranging up to 5.3%), shall be retrofitted by removing and replacing the portions with excessive cross slopes, so

that they do not exceed 2%.  42 U.S.C. § 3604(f)(3)(C)(i); Guidelines Req. 2; ANSI 4.3.7.
<u>See</u> Matrix Items 7, 9, 10, 13, 23.

 11) A curb ramp shall be added at the pet area.  <u>See</u> Matrix Item 15.

 12) The walkways to the A and C Buildings shall be modified so that they have
running slopes no greater than 5% and otherwise meet all requirements of ANSI A117.1-
1986.  <u>See</u> Remedial Plan Item 7; Matrix Items 6, 10, 21.

 13) The mailboxes at Centennial Trail shall be moved to, or additional mailboxes
constructed in, accessible locations adjacent to the accessible entries to the ground-floor
units.  42 U.S.C. § 3604(f)(3)(C)(i); Guidelines Req. 2.  <u>See</u> Matrix Item 27.

 14) A new walkway shall be added connecting Building C to a new accessible
parking space.  The walkway shall be on the shortest possible route from the building's
rear entry to the accessible parking space and shall meet all requirements of ANSI
A117.1-1986.  <u>See</u> Remedial Plan Item 7.

**Appendix B**

**Dwelling Units**

1) The interior and exterior thresholds at the primary entry doors and the interior thresholds at the patio doors to the ground-floor units shall be modified so that they have a bevel of no more than 1:2 and are no higher than 3/4" for the exterior and ½" for the interior, in accordance with 42 U.S.C. § 3604(f)(3)(C)(iii)(I); Guidelines Req. 4(4); ANSI A117.1-1986 4.3.8.  See Remedial Plan Item 9; Matrix Items 42, 44, 53, 55, 68, 70, 80, 88, 90.

2) The level change at the transitions between the carpet and the vinyl in the ground-floor units' kitchens and bathrooms shall be modified with a beveled transition strip no higher than ½", in accordance with 42 U.S.C. § 3604(f)(3)(C)(iii)(I); Guidelines Req. 4(2).  See Remedial Plan Item 9; Matrix Items 47, 57, 72, 82, 92.

3) In the Type C hall bathrooms and the Type D bathrooms, if a toilet's centerline is not at least 16" from the side wall, the toilet will be moved so that its centerline is 16" - 18" from the side wall.   See Matrix Items 62, 78.

4) All bedroom doors and bathroom doors in all ground-floor units, as well as the utility room doors in the Type E units shall be modified to provide a nominal 32" clear opening when the door is open to a 90 degree angle, as required by 42 U.S.C. § 3604(f)(3)(C)(ii); Guidelines Req. 3.  See Remedial Plan Item 12; Matrix Items 45, 56, 71, 81, 91.

5) The sliding glass patio doors shall be replaced with swing doors providing a minimum clear opening of 31 5/8" and a sidelight, as required by 42 U.S.C. § 3604(f)(3)(C)(ii); Guidelines Req. 3.  See Remedial Plan Item 8; Matrix Items 43, 54, 69, 79, 89.

6) The double sinks in the ground-floor kitchens shall be replaced with sinks that have controls centered on the bowl furthest from the range.  See Remedial Plan Item 11.

7) The bathroom thermostats in the model A, D and E ground floor units shall be retrofitted so that they are no higher than 48" above the floor.  42 U.S.C. § 3604(f)(3)(C)(iii)(II); Guidelines Req. 5.   See Remedial Plan Item 14; Matrix Items 49, 74, 94.

8) Tenants shall be provided with remote controls for the air conditioners, and, if necessary, the air conditioners shall be modified so that they can be operated by remote control.  42 U.S.C. § 3604(f)(3)(C)(iii)(II).  See Remedial Plan Item 14.

9) In the Type C master bathrooms, the sink cabinetry shall be replaced with a wall hung sink without cabinetry underneath or cabinetry that is removable.  <u>See</u> Matrix Item 65.

10) In the type E bathrooms, the toilet shall be moved forward and a portion of the wall between the toilet and tub shall be removed to provide maneuvering space consistent with 42 U.S.C. § 3604(f)(3)(C)(iv); Guidelines Req. 7(2)(a)(ii).  <u>See</u> Remedial Plan Item 15; Matrix Item 98.

11) The range in the model C, D, D-"handicap version," and E ground floor units shall be pulled out from the wall so that its front edge is at the same distance from the wall as the refrigerator's front edge, making it usable by persons with mobility impairments.  42 U.S.C. § 3604(f)(3)(C)(iii)(IV).  <u>See</u> Remedial Plan Item 17.

**Appendix C**

**<u>Additional Alteration at Tenant's Request</u>**

Within 30 days of entry of this Order, the Taigen Defendants will purchase a sufficient number of wing-its and surface-mounted grab bars to install at the tub and toilet in each bathroom in each ground-floor apartment.  Upon a resident's request, surface mounted grab bars shall be installed using wing-its at the tub and toilet in any bathroom in a ground-floor apartment at no expense to the resident.  This shall correct the lack of reinforcements in bathroom walls to allow later installation of grab bars.  42 U.S.C. § 3604(f)(3)(C)(iii)(III); 24 C.F.R. § 100.205(c)(3)(iii).  In the event of a sale or transfer of Centennial Trail, Defendants will provide any remaining grab bars and wing-its to the new owner.

**Appendix D**

**Notice To Ground-Floor Tenants of the Availability of Retrofits**

Due to litigation brought by the United States Department of Justice against the owners and developers of Centennial Trail ("Defendants"), accessibility barriers in individual ground floor units have been brought to Defendants' attention.  Defendants are currently in the process of correcting those barriers.

Your unit has been identified as one that is covered by the Fair Housing Act's accessibility requirements and that does not meet the accessible and adaptive design requirements of the Act.  In order to settle the lawsuit, Defendants have agreed to retrofit certain features of the covered dwellings to make them more accessible.

Under the terms of the settlement of the litigation, Defendants are required to complete the retrofits to all the interiors of units covered by the settlement within one year from the date of the settlement (_____, 2007).  Defendants are giving you notice that as a resident, you may request that the retrofits be made to your unit immediately.  If you make such a request, Defendants will complete the retrofits within 45 days of your request.  Please note though that regardless of whether you request that any retrofits be made, all retrofits will be made in your apartment by ___one year from settlement date___.  Should the modifications require your temporary relocation, Defendants will pay reasonable relocation and housing expenses while the modifications are being made.  The scheduling of the retrofits will take into account your  preferences and convenience, and relocation costs, if any, will be provided in advance.

Depending on the particular features of your unit, the alterations may require retrofits such as providing more clear floor space in front of and/or adjacent to kitchen and bathroom fixtures.  The retrofits include:

**[ITEMIZE]**

In addition, bathroom grab bars will be provided and installed at the request of a tenant.

It is not necessary that you or any member of your household have a disability in order to request these retrofits.  If you would like to request these retrofits or have any questions, please contact us at _____.

**Appendix E**

**<u>Release of Claims</u>**

        In consideration of the payment of the sum of _____ dollars ($_____), pursuant to  the Consent Order entered in <u>United States v. Taigen & Sons, Inc. et. al.</u>, CV-01-337-N-EJL (D. Id.), I, _____, hereby release the Defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the action.  I fully acknowledge and agree that this release of the Defendants shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.   I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.


        _____

        NAME: _____

        ADDRESS: _____
                      _____
                      _____

DATE: _____

**Appendix F**

**<u>Aggrieved Persons</u>**

1. $35,000 to Joseph Roman, on behalf of the Roman Family.

2. $15,000 to Carley Wright, in her own capacity and as executor of the Estate of Helen Ozbun.

3. $5,000 to David McKenzie.

**Appendix G**

**Employee Certification Regarding Consent Order**

On _____, 200___, I, _____, was instructed by _____ with respect to my responsibilities under the Consent Order entered by the U.S. District Court in United States v. Taigen & Sons, Inc., et. al., CV01-337-N-EJL (D. Id.) and the federal Fair Housing Act.  I have received a copy of and read the Consent Order and the federal Fair Housing Act.  I understand my legal responsibilities and will comply with those responsibilities.  I further understand that the Court may impose sanctions on me if I violate a provision of this Order and that my employer may also discipline me if I violate a provision of this Order.  I have been informed by my employer that I will not be reprimanded by my employer for providing information to any law enforcement agency (including the U.S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, telephone 202-514-4713) or official regarding my employer's compliance with the Fair Housing Act and/or the Consent Order.


_____
Signature


_____
Print name


_____
Job Title


_____
Date

24

**Appendix H**

**<u>Employee Certification Regarding Training</u>**

On _____, 200__, I, _____,  was instructed by
_____ with respect to my responsibilities under the Fair Housing Act.  I
understand my legal responsibilities and will comply with those responsibilities.


_____
Signature


_____
Job Title


_____
Date